FILED
2014 Jun-06 PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| SOUTHERN DATA AUTOMATION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No._____ |
| ) | |
| NETWORK SOLUTIONS, INC., ) | |
| DNS SUPPORT, AND ) | |
| TREY NOLAN, AN INDIVIDUAL, ) | |
| ) | |
| Defendants. ) | |

### COMPLAINT

The Plaintiff Southern Data Automation, Inc., ("Southern Data Automation "), by its undersigned counsel, hereby files this Complaint against the Defendant Network Solutions, Inc., ("Network Solutions"), DNS SUPPORT ("DNS") and Trey Nolan ("Nolan") collectively hereafter (the "Defendants") for claims arising under 15 U.S.C. §1125(d) the Anti-Cybersquatting Consumer Protection Act and other causes of action, and seeking damages, including, without limitation, damages under 15 U.S.C. §1117. In support of its Complaint, Southern Data Automation states:

### Parties, Jurisdiction, and Venue

1.  Southern Data Automation is an Alabama corporation organized and existing under the laws of the State of Alabama with its principal place of business located at 825 Old South 4th Street, Gadsden, AL 35901.

1

2. Network Solutions is an Alabama corporation organized and existing under the laws of the State of Alabama with its principal place of business located at 226 South 5th St., Gadsden, AL 35901.

3. DNS, upon information and belief, is an unincorporated alter ego of Network Solutions, and is doing business at 226 South 5th Street, Gadsden, Alabama.

4. Trey Nolan is an adult resident citizen of Gadsden, Alabama, and can be served at 226 South 5th Street, Gadsden, Alabama.

5. References to the "Defendants" throughout denote and connote the defendants Network Solutions, DNS, and Trey Nolan, collectively, and separately and severally.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted by Plaintiff under 28 U.S.C. §§ 1331 and 1338 because Plaintiff's claims and right to relief arise primarily under the Lanham Act, §§1051-1127. This Court has supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. §1367(a).

7. This Court has authority to declare the rights and legal relations of the parties through declaratory judgments under 28 U.S.C. §2201(a).

8. This Court has authority to issue injunctions and other equitable relief under 28 U.S.C. §2202 and 15 U.S.C. §§ 1116(a).

9. Venue is premised on 28 U.S.C. §1391(a). This action is brought in the judicial district in which the Defendants either reside or maintain their principal place of

business, and a substantial part of the events or omissions giving rise to the Plaintiff's claims herein occurred within this district

## NATURE OF THE ACTION

10. This is a civil action for Lanham Act violations (including cyber-squatting), common-law trademark infringement, trademark dilution arising under Alabama law, and other state-law claims.

11. By this action, Plaintiff seeks damages, declaratory and equitable relief for Defendants' actual and threatened infringement of Plaintiff's common law trademarks, copyrights, service marks, trade dress and other intellectual property, as well as for Defendants' illegal cyber-squatting.

## Factual Background

12. Plaintiff Southern Data Automation has its principal place of business in Gadsden, Alabama, and is in the business of selling computer hardware and software and related services. Southern Data Automation's advertised goods and services include IT Security, Computer Networking, Computer Repair, Office Automation, Accounting Software, Computer and Telephone Integration, Internet Services, Servers, Workstations, Network Infrastructure Hardware, Custom Designed Systems and Networks, and On Site Service. Southern Data Automation's principal is Robert S. Guyton, Jr., who goes by "Bob Guyton."

13. Plaintiff is the owner of all right, title and interest in and to said certain intellectual property relating to the operation of its computer business, including but not limited to trademarks, service marks, tradenames, logos, and other propriety designations

3

(collectively Plaintiff's "Marks") as well as to trade dress, know how, trade secrets, proprietary processes, and confidential information (collectively Plaintiff's "Trade Secrets"). Plaintiff is also the owner of the domain name, www.southerndata.com.

14. Defendant Network Solutions has it principal place of business at 226 South 5th Street, Gadsden, Alabama, and is also in the business of selling computer hardware and software and related services. Network Solutions' advertised goods and services include Offsite/Online Backup, Onsite Backup, Network Infrastructure Hardware, Intrusion Detection Systems, Web Hosting, Cloud Storage/NetSol Cloud, Virus Scanning, Email Filtering, Virtual Private Servers, Website Development, Website Design Examples.

15. Network Solutions' principal is defendant Trey Nolen.

16. Plaintiff Southern Data Automation and Defendant Network Solutions offer competing goods and services within the same geographic market.

17. Plaintiff's name, Southern Data Automation, is the registered corporate name of Southern Data Automation. Bob Guyton reserved the name "Southern Data Automation, Inc." on March 27, 1997 with the Secretary of State of the State of Alabama. He then incorporated Southern Data Automation, Inc. on April 14, 1997.

18. Plaintiff's name, Southern Data Automation, has been in continuous use since April 14, 1997, and has trade value and good will associated with its use.

19. Plaintiff's name, Southern Data Automation, is a recognizable name and a unique name.

20. Plaintiff Southern Data Automation has derived and continues to derive goodwill from its name.

## DEFENDANTS' WRONGFUL ACTS

21.     Defendants own, operate, control, maintain, or receive benefit from a website domain name called "www.netsolinc.com" where they advertise products and services.

22.     Defendants also are the domain name registrars, registrants, or entities with control and authority regarding the disposition of the registration and use of the domain name "www.southerndataautomation.com".

23.     Defendants also are the domain name registrars, registrants, or entities with control and authority regarding the disposition of the registration and use of the domain name "www.bobguyton.com."

24.     The domain name "www.southerndataautomation.com" is not a separate or unique website.

25.     Instead, the domain name "www.southerndataautomation.com" is a front or sham name that forwards consumers directly to the Defendant Network Solutions' website.

26.     If a potential customer or user types "southerndataautomation.com" into a web browser, they will be directed to the Defendant Network Solutions' homepage, not the website of Plaintiff Southern Data Automation.

27.     Defendants' use of the domain name "www.southerndataautomation.com" is willful, intentional, in bad faith, and done with the intent to profit by misleading the public.

28.     The registration and or control and authority by the Defendants regarding the disposition and or use of the domain name "www.southerndataautomation.com" is in bad faith and is done with intent to profit from the goodwill of the Plaintiff Southern Data Automation.

29. The domain name "www.bobguyton.com" is also not a separate or unique website.

30. Instead, the domain name "www.bobguyton.com" is a front or sham name that steers consumers or users directly to the Defendant Network Solutions' homepage.

31. If a potential customer or user types "www.bobguyton.com" into a web browser, they will be directed to the Defendant Network Solutions' homepage, not Plaintiff Southern Data Automation's homepage.

32. Defendants' use of the domain name "www.bobguyton.com" is willful, intentional, in bad faith, and done with intent to profit by misleading the public.

33. The registration and or control and authority by the Defendant regarding the disposition of the domain name "www.bobguyton" is in bad faith and is done with intent to profit from the goodwill of the Plaintiff Southern Data Automation.

34. Defendants' domain name choices are plainly designed to benefit them from the goodwill associated with Plaintiff's valuable Marks and to cause consumers to believe that there is a connection between the Plaintiff and the Defendants.

35. The Defendants are using the confusingly similar domain name of "www.southerndataautomation.com" in bad faith, as that term is defined at 15 U.S.C § 1125 (d)(1)(B)(i), because the name "Southern Data Automation" is the intellectual property and registered corporate name of the Plaintiff.

36. The Defendants are using the confusingly similar domain name "www.southerndataautomation.com" in bad faith, as that term is defined at 15 U.S.C § 1125 (d)(1)(B)(ii), because "Southern Data Automation" is the legal entity name of the Plaintiff and is the name commonly used to identify the Plaintiff.

6

37. The Defendants are using the confusingly similar domain name "www.southerndataautomation.com" in bad faith, as that term is defined at 15 U.S.C § 1125 (d)(1)(B)(iii), because Defendants did not use that name prior to Plaintiff's use of it.

38. The Defendants are using the confusingly similar domain name "www.southerndataautomation.com" in bad faith as that term is defined at 15 U.S.C § 1125 (d)(1)(B)(iv) because Defendants intend to and are diverting consumers from Plaintiff Southern Data Automation's online location to a site accessible under the illegal "southerndataautomation.com" domain name with the intent to harm the goodwill represented by the registered corporate name, "Southern Data Automation, Inc."

39. The Defendants are using the confusingly similar domain name "www.southerndataautomation.com" in bad faith, as that term is defined at 15 U.S.C § 1125 (d)(1)(B)(iv), because Defendants intend to and are diverting consumers from Plaintiff Southern Data Automation's online location to Network Solutions' online location for commercial gain.

40. The Defendants are using the confusingly similar domain name "www.southerndataautomation.com" in bad faith, as that term is defined at 15 U.S.C § 1125 (d)(1)(B)(iv), because Defendants intend to and are diverting consumers from Plaintiff Southern Data Automation's online location to Network Solution's online location for commercial gain and creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site.

41.  The Defendants are using the confusingly similar domain name "www.bobguyton.com" in bad faith as that term is defined at 15 U.S.C § 1125 (d)(1)(B)(ii) because that domain name is the legal name of Bob Guyton, the principal of Plaintiff Southern Data Automation.

42.  On or about April 14, 2014 Plaintiff delivered, and Defendant Trey Nolan accepted, a cease and desist letter instructing the Defendants to stop using the domain names "southerndataautomation.com" and "bobguyton.com".

43.  As of the date of the filing of this Complaint, Defendants have failed to comply with the Plaintiff's cease and desist letter. The Defendants are willfully and in bad faith using the names "southerndataautomation.com" and "bobguyton.com".

44.  As a proximate result of the acts and omissions of Defendants set forth hereinabove, the Plaintiff Southern Data Automation has suffered financial damages, loss of goodwill, other compensable damages, and incurred attorneys' fees.

45.  Plaintiff Southern Data Automation claims all damages recoverable by it at law, including without limitation all damages provided under 15 U.S.C. §1117.

## COUNT ONE: VIOLATION OF ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT 15 U.S.C. §1125(D)

46.  Plaintiff Southern Data Automation adopts each of the foregoing numbered paragraphs.

47.  Defendants have registered and or control domain names with bad faith intent to, without limitation, mislead the public and thereby profit from the Plaintiff's goodwill associated with its Marks.

48. Defendants use those domain names to advertise and otherwise attract the Plaintiff's customers to the Defendants' businesses.

49. Defendants have a bad faith intent to profit from the Plaintiff's Marks and domain names as evidenced by their refusal to cease and desist from using the domain names, and adoption of domain names confusingly similar to the Plaintiff's Marks and domain names. Further, Defendants promote infringing goods and services on the aforesaid domain names with the intent to derive an economic benefit from the goodwill associated with Plaintiff's Marks.

50. Defendants do not have reasonable grounds to believe that their use of the domain names is a fair or otherwise lawful use. At all relevant times, Defendants have been on notice of the Plaintiff's contention that their domain names are confusingly similar to the Plaintiff's Marks.

51. Defendants' trademark dilution has and will continue to cause immediate and irreparable harm, injury, and damage to Plaintiff.

52. Plaintiff has no adequate remedy at law for the aforementioned irreparable harm.

53. Plaintiff is entitled to damages, an award for its reasonable attorneys' fees, the costs of this action, interest, and such other relief as this Court deems appropriate.

54. Defendants have violated 15 U.S.C. §1125(d).

55. As a result of Defendants' acts and omissions, Plaintiff Southern Data Automation has suffered damages.

WHEREFORE, Plaintiff Southern Data Automation demands judgment against the Defendants for all damages recoverable by law, including, the Defendants' profits, the costs

of this action, attorneys' fees, injunctive relief, and any other relief to which the Plaintiff may be entitled, without limitation.

## COUNT TWO: COMMERCIAL MISAPPROPRIATION

56. Plaintiff Southern Data Automation adopts the foregoing numbered paragraphs.

57. Plaintiff Southern Data Automation has a property interest in the exclusive use of its Marks.

58. Plaintiff Southern Data Automation's Marks are sufficiently unique and or famous to constitute a property interest.

59. Plaintiff Southern Data Automation's Marks have commercial value, including goodwill value.

60. Defendants' registration and or control of the domain name "southerndataautomation.com" constitute commercial misappropriation of the Plaintiff Southern Data Automation's Marks and goodwill.

61. As a result of the Defendants' commercial misappropriation of Plaintiff Southern Data Automation's Marks, the Plaintiff has suffered damages.

WHEREFORE, Plaintiff Southern Data Automation demands judgment against the Defendants for all damages to which it may be entitled, Defendants' profits, Plaintiff's costs and attorneys' fees, and injunctive relief, and all other relief to which the Plaintiff is entitled, without limitation.

## **COUNT THREE: COMMON LAW TRADEMARK INFRINGEMENT**

62. Plaintiff Southern Data adopts the foregoing numbered paragraphs.

63. Plaintiff is the owner of the Marks used in connection with its computer sales and servicing business. Plaintiff has used these Marks in commerce continuously, and, as a result, consumers have come to associate the Marks with goods and services provided by Plaintiff. As a result of this association, Plaintiff has accrued significant goodwill.

64. Defendants are using domain names, trademarks or service marks that are confusingly similar to Plaintiff's Marks.

65. Defendants' use of these confusingly similar marks misleads the public as to the sources of the goods and services provided by Defendants. Accordingly, Defendants' actions constitute common law trademark infringement of Plaintiff's Marks.

66. Defendants' actions have been willful and deliberate, as evidenced by Defendants' refusal to cease use of the confusing domain names despite Plaintiff's request that Defendants cease and desist from their wrongful conduct.

67. Defendants' actions have harmed Plaintiff's valuable intellectual property rights, have damaged Plaintiff's goodwill, and have caused Plaintiff to suffer damages that should be addressed by injunctive remedies.

68. If Defendants are not preliminarily and permanently enjoined by this Court, Defendants will continue their acts of infringement set forth above, thereby deceiving the public, trading on Plaintiff's goodwill, and causing Plaintiff immediate and irreparable harm, damage, and injury.

69. Plaintiff has no adequate remedy at law for the aforementioned irreparable harm.

70. Plaintiff is entitled to damages, an award of its reasonable attorneys' fees, the costs of this action, interest, and such other relief as this Court deems appropriate.

## COUNT FOUR: TRADEMARK DILUTION PURSUANT TO ALA. CODE § 8-12-17

71. Plaintiff adopts and re-alleges the paragraphs above as if set forth fully herein.

72. Plaintiff's Marks are famous. They are widely recognized by the general consuming public of the State of Alabama, or by the general consuming public of a significant geographic area of the State of Alabama, as a designation of source of goods and services provided by Plaintiff.

73. Defendants' use of confusingly similar marks in connection with a computer sales and service business is likely to cause dilution of Plaintiff's famous Marks through blurring and or tarnish in violation of Ala. Code § 8-12-17.

74. Upon information and belief, Defendants willfully intended to cause dilution, with the intent to blur and or tarnish Plaintiff's Marks.

75. Accordingly, Plaintiff is entitled to injunctive relief throughout the Alabama geographic area in which Plaintiff's Marks are famous.

76. Defendants' dilution of Plaintiff's Marks has and will continue to cause immediate and irreparable harm, injury, and damage to Plaintiff.

77. Plaintiff has no adequate remedy at law for the aforementioned irreparable harm.

78. Plaintiff is entitled to damages, an award for its reasonable attorneys' fees, the costs of this action, interest, and such other relief as this Court deems appropriate.

## COUNT FIVE: UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)(1)

79. Plaintiff adopts and re-alleges the paragraphs above as if set forth fully herein.

80. Defendants' use of Plaintiff's Marks to advertise Defendants' goods and services is a false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection or association of Defendants with Plaintiff and as to the origin, sponsorship, or approval of such goods or services by Plaintiff.

81. The aforementioned acts are in violation of 15 U.S.C. § 1125(a), in that Defendants have used in connection with goods and services a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection or association of Defendants with Plaintiff and as to the origin, sponsorship, and approval of Defendants' goods and services and commercial activities by Plaintiff.

82. On information and belief, Defendants' heretofore alleged acts of false designation of origin have been committed with the intent to cause confusion, mistake and to deceive.

83. By reason of Defendants' actions, Plaintiff has suffered and will suffer damage to its business, reputation and goodwill.

84. Defendants threaten to continue to do the acts complained of herein, and, unless enjoined and restrained, will continue to do so, all to Plaintiff's irreparable damage. Plaintiff has no adequate remedy at law for the aforementioned irreparable harm.

85. Plaintiff is entitled to damages, an award for its reasonable attorneys' fees, the costs of this action, interest, and such other relief as this Court deems appropriate.

## COUNT SIX: COMMON LAW UNFAIR COMPETITION

86. Plaintiff adopts and re-alleges the paragraphs above as if set forth fully herein.

87. Defendants have adopted and used on their website trademarks or service marks that are confusingly similar to Plaintiff's Marks and material that is designed to cause an association between Plaintiff and Defendants.

88. Defendants' actions constitute unfair competition by "palming off" under Alabama law.

89. Defendants seek to "palm off" its services as being offered by, approved by, affiliated with, or endorsed by Plaintiff. Upon information and belief, Defendants acted intentionally or, at least, recklessly and without regard to the effect of their actions.

90. Defendants' actions have and will continue to cause immediate and irreparable harm, damage and injury to Plaintiff.

91. Plaintiff has no adequate remedy at law for the aforementioned irreparable harm.

92. Plaintiff is entitled to damages, an award for its reasonable attorneys' fees, the costs of this action, interest, and such other relief as this Court deems appropriate.

### COUNT SIX: NEGLIGENCE

93. Plaintiff Southern Data Automation adopts the foregoing numbered paragraphs.

94. Defendants are under a duty not to register and or control a domain name identical to a business competitor.

95. Defendants negligently registered and or controlled a domain name bearing an identical likeness to the Plaintiff Southern Data Automation's name, a business competitor with the Defendants, when the Defendants knew or should have known that it had a duty not to engage in such an act.

96. The domain names used by the Defendants, including the names "www.southerndataautomation.com" and "www.bobguyton.com" are identical to the Plaintiff's name, Southern Data Automation, and to the name of Plaintiff's principal, Bob Guyton.

97. As a result of Defendants' negligence, Plaintiff Southern Data Automation has suffered damages.

WHEREFORE, Plaintiff Southern Data Automation demands judgment against the Defendants for all damages to which it may be entitled, including costs, attorneys' fees, and injunctive relief, and for such other relief to which it may be entitled.

## COUNT SEVEN: WANTONNESS

98. Plaintiff Southern Data Automation adopts the foregoing numbered paragraphs.

99. Defendants are under a duty not to register and or control a domain name identical to a business competitor.

100. Defendants intentionally and wantonly registered and or controlled a domain name bearing an identical likeness to the Plaintiff Southern Data Automation's name, a business competitor with the Defendants, when the Defendants knew or should have known they had a duty not to commit such an act and that such an act was likely to result in harm to the Plaintiff.

101. The domain names used by the Defendants, including the names "www.southerndataautomation.com" and "www.bobguyton.com" are identical to the Plaintiff's name, Southern Data Automation, and to the name of Plaintiff's principal, Bob Guyton.

102. Defendants' intentional and or wanton acts have damaged the Plaintiff Southern Data Automation.

WHEREFORE, Plaintiff Southern Data Automation demands judgment against the Defendant Network Solutions for all damages to which it may be entitled, including punitive damages, costs and attorneys' fees, and such other relief to which the Plaintiff Southern Data Automation may be entitled.

## **PRAYER FOR RELIEF**

Based on the foregoing, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants on all counts and causes of action and in that judgment grant Plaintiff the following relief:

(a) Injunctive relief, under Alabama law and the Lanham Act, against all Defendants, their members, agents, servants employees, attorneys and all persons in active concert or participation with them by temporary restraining order, preliminary injunction, and permanent injunction from using the Plaintiff's Marks, variations of Plaintiff's Marks, or any mark confusingly similar to Plaintiff's Marks, including the domain names as set forth hereinabove;

(b) Require Defendants to set forth in writing and to serve on the Plaintiff 30 days after the entry of any preliminary or permanent injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with this injunction;

(c) Damages, including punitive damages, for Defendants' negligence, wantonness, trademark infringement and trademark dilution;

(d) Treble damages pursuant to 15 U.S.C. § 1117 (a);

(e) Award Plaintiff the cost of suit and its reasonable attorneys fees; and

(f) Award such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES SO TRIABLE.

DATE: June 6th 2014

Respectfully Submitted,

E. Allen Dodd, Jr. (DOD011)

17

J. Eric Brisendine (BRI040)
Attorneys for Plaintiff
Scruggs, Dodd, & Brisendine
Attorneys P.A.
P.O. Box 681109
Fort Payne, Alabama 35968
Phone: (256) 845-5932
Fascimile: (256) 845-4325
eadscruggs@farmerstel.com
/s/ F. Michael Haney
F. Michael Haney (HAN012)
OF COUNSEL ATTORNEY FOR PLAINTIFF
Inzer, Haney, McWhorter & Haney, LLC
P.O. Drawer 287
Gadsden, Alabama 35902-0287
Phone: (256) 546-1656
Fascimile: (256) 546-1093
mikehaney@bellsouth.net